```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                            :
CHRISTINE FUMICH,                           :   Case. No. 5:14-CV-2307
                                            :
        Plaintiff,                          :
                                            :
    v.                                      :   OPINION & ORDER
                                            :   [Resolving Doc. 1 ]
CAROLYN W. COLVIN,                          :
ACTING COMMISSIONER OF                      :
SOCIAL SECURITY,                            :
                                            :
        Defendant.                          :
                                            :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this social-security disability benefits case, Plaintiff Christine Fumich objects to the Magistrate Judge's Report and Recommendation, that recommends affirming the Administrative Law Judge's ("ALJ") denial of benefits. For the reasons below, the Court DECLINES TO ADOPT the recommendation of the Magistrate Judge and REMANDS the case back to the ALJ for further evaluation.

### I.  Background

On May 13, 2011, Fumich filed applications for Supplemental Security Income. She alleged an October 16, 2009 disability onset date. After her applications were denied initially and upon reconsideration, Fumich requested a hearing before an ALJ.

Fumich appeared with counsel at a hearing before ALJ Thomas Ciccolini.[1]

On May 13, 2013, the ALJ determined that Fumich was not disabled within the meanings of the Social Security Act. The ALJ's findings can be summarized as follows:

1. Fumich had not engaged in substantial gainful activity since October 16, 2009, the alleged onset date.[2]

---
[1] Doc. 12 at 40.
[2] *Id*. at 32.

Case No.14-cv-2307
Gwin, J.

2. Fumich had the following severe impairments: bipolar disorder; learning disability; degenerative disc disease, lumbar and thoracic; knee tendonitis; and obesity.[3]

3. Fumich did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.[4]

4. Fumich had the residual functional capacity to perform light work except she should have a sit and stand option to shift positions as needed every couple hours. She should have no reading or math requirement. The work should not be complex, involving no arbitration, mediation or negotiation. She should not have work as a telephone solicitor. She is limited to simple, repetitive tasks and low stress work without high production quotas. She should have minimal interaction with the public, co-workers and supervisors.[5]

5. Fumich is unable to perform any past relevant work.[6]

6. Fumich was born on March 25, 1975 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[7]

7. Fumich had at least a high school education and was able to communicate in English.[8]

8. Transferability of job skills was not an issue because Fumich's past relevant work is unskilled.[9]

9. Considering Fumich's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Fumich can perform.[10]

Fumich filed this complaint, and the Court referred the matter to Magistrate Judge George Limbert. Magistrate Judge Limbert issued a Report and Recommendation, finding that the ALJ's determination was supported by substantial evidence and recommending that the Court deny Fumich's appeal.[11] Specifically, the Magistrate Judge found: (1) that substantial evidence supports the ALJ's determination that Plaintiff's mental impairments did not meet Listing

---

[3] *Id.*
[4] *Id.* at 33.
[5] *Id.* at 35.
[6] *Id.* at 38.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] Doc. 16.

2

Case No.14-cv-2307
Gwin, J.

12.05C; (2) that the ALJ evaluated the treating psychologist's opinion in accordance with the treating physician rule; and (3) that the ALJ applied the proper standards in assessing the examining psychologist's opinion and substantial evidence supports the ALJ's reasons for attributing little weight to the treating psychologist's opinion.

Fumich now objects to the R&R.[12] This Court reviews the objections *de novo*. Fumich argues that the ALJ relied on scant evidence to find that substantial evidence supported the ALJ's conclusion. Fumich also contends that the ALJ erred in his analysis of Plaintiff's treating psychologist and an examining psychologist and failed to comply with the treating physician rule.

## II. Legal Standard

In reviewing an ALJ's disability determination under the Social Security Act, a district court decides whether the ALJ's decision is "supported by substantial evidence and is made pursuant to proper legal standards."[13] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14] A district court should not try to resolve "conflicts in evidence or decide questions of credibility,"[15] and may not reverse an ALJ's decision when substantial evidence supports it, even if the court would have made a different decision.[16]

To establish disability under the Social Security Act, Plaintiff must show that she cannot engage in any substantial gainful activity because of a "medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to

---

[12] Doc. 17.
[13] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see also* 42 U.S.C. § 405(g).
[14] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).
[15] *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).
[16] *Siterlet v. Sec. of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).

3

Case: 5:14-cv-02307-JG Doc #: 19 Filed: 02/29/16 4 of 10. PageID #: 887

Case No.14-cv-2307
Gwin, J.

last for a continuous period of not less than twelve months."[17] Plaintiff's impairment must prevent her from doing her previous work or any other work existing in significant numbers in the national economy.[18]

### III. Discussion

*A. Listing 12.05C*

First, Plaintiff Fumich says that the ALJ failed to properly evaluate whether her condition met or equaled Listing 12.05C.[19] Listing 12.05 states in relevant part:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> C.A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . .

In order to satisfy this Listing, a claimant must first satisfy the diagnostic description of the introductory paragraph, and then satisfy any one of the four sets of criteria in Listing 12.05.

> The ALJ wrote the following in considering Listing 12.05C:
>
> The undersigned has also considered whether the "paragraph C" criteria of 12.04 are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not show repeated episodes of decompensation, each of extended duration; a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or current history of one or more years' inability to function

---

[17] *See* 42 U.S.C. 423(d).
[18] *Id.*
[19] Doc. 17.

4

Case No.14-cv-2307
Gwin, J.

> outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.[20]

The ALJ then elaborated:

> Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The claimant's daily functioning is not supportive of an IQ in this range. Recent test scores are given little weight, as they are inconsistent with the claimant's daily activities and they were based on testing for the purposes of obtaining Disability status. This testing placed her at Mild Mental Retardation status. However, the claimant's activities do not support such limitations and are more consistent with Borderline Intellectual Functioning. She was able to work at Taco Bell for 11 years. She is able to read and write. Records from her youth indicate only 'mild intellectual difficulty.'[21]

Although this analysis is brief, it does specifically mention Listing 12.05C and list evidence for why Plaintiff Fumich does not meet Listing 12.05C. Plaintiff argues that the evidence that she does not meet Listing 12.05C is scant.

Substantial evidence is more than a scintilla of evidence, but less than a preponderance.[22] This Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion.[23] This Court agrees with Magistrate Judge Limbert that the ALJ supported his analysis of Listing 12.05C with substantial evidence.

The ALJ explained that Plaintiff's daily functioning does not support an IQ between 60 and 70, and he explained that he attributed little weight to Plaintiff's recent IQ testing because it was not consistent with her daily functioning and her 11 years of employment with Taco Bell, and the testing was done for the purpose of obtaining social

---

[20] Doc. 12 at 34.
[21] *Id.*
[22] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).
[23] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

5

Case No.14-cv-2307
Gwin, J.

security benefits.[24] The ALJ also noted that Plaintiff's activities were more supportive of BIF rather than mild mental retardation and that records from when Plaintiff Fumich was younger indicated only mild intellectual difficulty and not mental retardation.[25]

Although the ALJ did not note this in his decision, Plaintiff's scores on the most recent IQ testing were a full scale IQ at 69 and verbal IQ at 68, which placed Plaintiff in the mild mental retardation range.[26] Dr. Smith, who administered Plaintiff's recent IQ testing wrote, "the test results are considered somewhat low as a measure of best current functioning and a slight underestimate of capacity because of interference from nonintellectual factors."[27] Dr. Smith further opined that if Plaintiff Fumich could eliminate her anxiety, she would be functioning at the extremely low range of intelligence rather than in the mental retardation range.[28] Thus, Dr. Smith herself estimated that despite the test scores, Plaintiff's basic intellectual abilities were within the borderline range.

Further, the agency psychological examiner, Dr. Dallara, diagnosed Plaintiff with BIF.[29] Plaintiff told Dr. Dallara that she worked at Taco Bell from 1997 to 2007 but quit that job when she moved out of the area.[30] Fumich also told Dr. Dallara that she worked again at a different Taco Bell in 2008 but quit that job because she wanted to spend more time at home.[31] Plaintiff Fumich told Dr. Dallara that she had never been terminated from a job and did not have a history of not getting along with others on the job.[32] Plaintiff

---

[24] Doc. 12 at 35.
[25] *Id*.
[26] *Id*. at 639.
[27] *Id*.
[28] *Id*.
[29] *Id*. at 516.
[30] *Id*. at 514.
[31] *Id*.
[32] *Id*.

6

Case No.14-cv-2307
Gwin, J.

Fumich also reported that she cared for her minor daughter and had passed the written portion of the driver's license examination.[33]

This Court agrees with Magistrate Judge Limbert that the ALJ properly applied the Listings and substantial evidence supports his decision to find that Plaintiff did not meet Listing 12.05C.

B. *Treating Psychologist Opinion*

Plaintiff also says that the ALJ erred in evaluating the opinion of treating psychologist Dr. Sampsel.

Under the treating physician rule, "treating source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record."[34]

However, an ALJ is allowed to give a treating source's opinion less controlling weight so long as he gives "good reasons" for doing so. "Good reasons" are reasons that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.[35] This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [she] is not, unless some reason for the agency's decision is supplied."[36]

---

[33] Doc. 12 at 55, 514.
[34] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).
[35] *Id*. at 376.
[36] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

7

Case No.14-cv-2307
Gwin, J.

In deciding the weight to be given to the treating physician's opinion, the ALJ must consider factors such as (1) the length of the treatment relationship and the frequency of the examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the source, and (6) any other factors that tend to support or contradict the opinion.[37] The ALJ is not required to provide "an exhaustive factor-by-factor analysis." However, "the reasons must be supported by the evidence in the record and sufficiently specific to make clear the weight given to the opinion and the reasons for that weight."[38]

Here, the ALJ wrote the following about Dr. Sampsel's opinion:

Bruce Sampsel, PhD indicated on April 3, 2012 that the claimant is diagnosed with Mood Disorder, NOS and has difficulty with anger and impulsiveness. He indicated that she has marked impairment in mental functioning (20F). . . These opinions are given little weight as they are inconsistent with Dr. Sampsel's treatment records, especially more recent records, which demonstrate improvement with medications. Further, the claimant's activities of daily living do not support marked limitations. Marked limitations are also inconsistent with the claimant's prior consultative examination, which noted very mild limitations (14F).[39]

As noted by Magistrate Judge Limbert, this analysis is brief. The ALJ did not identify Dr. Sampsel as Plaintiff's treating psychologist. The ALJ did not explicitly state that he was giving Dr. Sampsel's opinion no controlling weight. The ALJ did not identify or provide citations to the evidence he relied upon, other than to narrow it down to "more recent records, which demonstrate improvement with mediations" and a brief mention of "claimant's prior consultative examination, which noted very mild limitations (14F)." Further, the ALJ's earlier analysis of Dr. Sampsel's treatment records was also brief.

---

[37] *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007).
[38] *See Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011).
[39] Doc. 12. at 38.

Case No.14-cv-2307
Gwin, J.

This Court finds that the ALJ's brief paragraph explaining why he did not give controlling weight to the treating psychologist does not satisfy the "good reasons" standard as it is not sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and reasons for that weight.

C. *Examining Psychologist Opinion*

Plaintiff also says that the ALJ did not adequately address the opinion of Dr. Smith, a one-time examining psychologist who examined Plaintiff and who gave an opinion that she had marked limitations and was psychologically disabled from work.[40] Plaintiff argues that the ALJ failed to address Dr. Smith's specialization, the examining relationship, the supportability of her opinion and the consistency of her opinion with her examination findings as required by Social Security Ruling 06-03p. Plaintiff says the ALJ's only analysis of Dr. Smith's opinion was to find that it was inconsistent with Dr. Sampsel's treatment notes.[41]

Because "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, [and] psychologists," the ALJ must review and evaluate the opinions of one-time examining physicians and record-reviewing physicians.[42] When considering such opinions, an ALJ "will evaluate the findings using the relevant factors . . . such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the

---

[40] Doc. 13 at 23.
[41] *Id.*
[42] 20 C.F.R. § 416.927 (e)(2).

9

Case No.14-cv-2307
Gwin, J.

case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions."[43]

Further, unless a treating physician's opinion has been accorded controlling weight, an ALJ must "explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist."[44] However, an ALJ is not bound by the findings of agency medical and psychological consultants.[45]

Here, the ALJ's evaluation was again very brief. The ALJ summarily identified Dr. Smith's opinion and noted that Dr. Smith had evaluated Plaintiff Fumich for the purposes of a disability assessment.[46] The ALJ explained that Dr. Smith had found moderate and marked limitations for Plaintiff.[47] The ALJ then gave little weight to both Dr. Smith and Dr. Sampsel's opinions, stating that the opinions were inconsistent with Dr. Sampsel's treatment notes and Plaintiff's daily activities. The ALJ's decision to give little weight to Dr. Smith's opinion was cursory and did not adequately evaluate Dr. Smith's opinion.

## IV. Conclusion

For the reasons above, the Court DECLINES TO ADOPT the recommendation of the Magistrate Judge and REMANDS the case back to the ALJ for further evaluation.

IT IS SO ORDERED.

Dated: February 29, 2016*s/James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE

---

[43] 20 C.F.R. § 416.927 (e)(2)(ii).
[44] *Id*.
[45] 20 C.F.R. § 416.927 (e)(2)(i).
[46] Doc. 12 at 37.
[47] *Id*. at 38.

10